May it please the Court, my name is Judith Wood and I am arguing the case of Lemos Magana this morning. Lemos Magana is the victim of pervasive endemic misogyny. She was both a religious and a political activist in El Salvador. The government characterizes Chacal, her assailant's advances on her, as romantic. Instead, it was a continuous attempt to silence her and her father, both of whom openly expressed their religious and political opposition to the gangs and the gangs' abuse of women in El Salvador. Femicide is the order of the day in El Salvador. Women who are recruited by gangs face the prospect of being raped by every gang member. When Chacal demanded that she be his woman, it was an assertion of raw power, nothing romantic about it. Faced with several death threats associated with guns pointed at her, she went to the police and the police told her that they couldn't do anything until someone was seriously harmed, in this case it meant killed. So is your argument not that she faced past persecution but that she has a reasonable fear of future persecution? Your Honor, with all due respect, I believe she definitely faced past persecution and future persecution. So tell me what the past persecution was. There were several times that she and her father walked out of the church together after her father had either preached or she had been teaching in a religious class in the school. And this guy, Chacal, came up to her, pointed a gun at her head and said, you either be my woman or I will kill you. And then he shot the gun into the air. He also intimidated her. The record is not clear exactly how he intimidated her. I happen to know but it's not in the record. And then after, so that was part of the past persecution. This happened on a number of occasions and she and her father went to the police and the police said there's nothing we can do about it. We can't do anything about it. So the culmination of this, these events where this guy would approach her and demand that she join him in the gang, forced her to leave El Salvador because she did not want to be killed. Assume for a second that there was no religious motivation in what Chacal did, what then is the social group? Assume there was no religious motivation in what the gang member was doing, which seems pretty clear from the record. What is the social group that you claim your client belongs to? Well, she was the daughter of a lay pastor. No, I understand and I understand that a religious group can be a social group. I was asking you for a moment to assume that the motivation of the gang member was not religious but to get her in the gang so he could have his will with her. Is there a relationship to a social group here? Well, the... In other words, it's not enough that I can be Jewish and persecuted. If I'm not persecuted because I'm Jewish, then it doesn't matter. So I'm trying to figure out what tells me the persecution is religious based here. Well, because why was it religious persecution or a particular social group? Yeah, I mean you started off by saying women in El Salvador are subject to this kind of persecution. As women, and I'm trying to figure out whether or not the motivation in this case was religious. Well, because she's walking out of a church, a church where she actually gives lessons to people in the church. I have the same problem right now as Judge Hurwitz, which is how do you define the particular social group that she belongs to? In this case, Your Honor, Perar Bach is really very, very informative because Perar Bach was a young man from Guatemala who took definite steps to oppose the gangs. And he was granted that status of being a member of a particular social group. In this case, Magana was also taking definite steps. She spoke publicly, not only in church, but at private meetings, public meetings, private and public meetings with her father against the gangs, and particularly against abusive women. And when the gang member would meet the father at the door of the churches, they were going out, he would ask him, why are you preaching against gangs? I don't think that was said in a genteel way by this gang member at the church door. It was probably in a very threatening way. And one can assume that since it was followed by brandishing a gun at Magana's head and Furthermore, there's a second police report. There was a first police report, and then there's a second police report, which leads to your question about future. Before you go on, below, in the BIA and in the IJ, you propose two social groups, or your client did, her family and women recruited by gangs. I don't see a proposed social group of those who preached against or opposed the gangs. Am I mistaken that this is the first time we're hearing about that? Well, she definitely took an action. Now, I may be supported by the record, that's not what I'm asking. I'm asking, did you ever propose a social group of those who vocally opposed gangs in the agency? We can only consider arguments made to the agency. She definitely taught at this church. I'm asking a very specific question. Did you propose this social group to the IJ or the BIA? I believe so. It may not be clear from the record. I think that a human being doesn't actually fit into all these boxes perfectly. She had a lot of sides to her personality, like most of us do. She was religious. She was somewhat political. She was trying to be a complete human being, but faced this demoralizing treatment that women face in El Salvador. You have to remember, Your Honor, that in El Salvador there's a tremendous rate of femicide. Women are raped every day in El Salvador. Under this enormous pressure, she's still able to speak out. All these boxes in the I-589 form and the requirement that a particular social group be defined at the outset, a person, a human being usually spills out of those boxes, and the boxes bleed into one another. If I may move on to future persecution, with all due respect. There was another police report. Magana left El Salvador November 4th. On November 11th, her father again went to the police. And in that police report, it clearly states, the police report says, in that instant, persecution, the police said, persecution is very direct. And for this motive, they made the decision to come to the police station. That's talking about the first report. But then, afterwards, Chacal went to the father and said to the father, we have unfinished business with your daughter. We will find her. We will seek her out. And if you don't tell us where she is, we'll kill you. Counsel, is that in the record? Yes, it's page 344 in the car. 344. 344 in the CAR. Okay. Let me ask you one more question. I think you wanted to save some time for rebuttal. The IJ found your client not credible. The BIA assumed credibility and denied relief. Is the credibility finding, therefore, before us or not before us? It's not before us. She's found credible by the BIA. No, the BIA didn't find her credible. The BIA said we will assume credibility because we don't think that even if she's credible, this gives rise to relief. The IJ found her not to be credible. So my question is, if we disagreed with the BIA that if these statements were credible, that they wouldn't give rise to relief, what do we do with the lack of credibility finding? Well, if you find her credible... We can't find her credible. We're not allowed to find credibility. Only the trial judge and the BIA can deal with that. Well, it's a little murky what they say. Well, it's not at all clear. The IJ says I don't find her credible, but I'm going to check both boxes. I don't find her credible, but even if she's telling the truth, she's not entitled to relief. The BIA says we don't have to deal with the first half of that because we agree with the second half. So my question is, if you were to prevail here, what do we do with the lack of credibility finding? We can't overturn it. I definitely oppose the lack of credibility. I know you oppose it, but what do we do with it? I think you should reverse and find her credible. And if you do find her credible, then her testimony should be taken at face value as to all the things that happened. So you're saying that there's no way that the IJ could have found her not credible? I think that the IJ was absolutely wrong because the IJ based her credibility finding about discrepancies between her testimony and the police report. And actually, the police report is quite complete. And also the plea agreement, her plea agreement in the criminal case and the circumstances of getting the Guatemalan passport. I can't hear you. I'm sorry. It wasn't just inconsistencies with the police report that she made. It was also inconsistencies with the plea agreement she entered into in the criminal case. Yes. And also another thing that she based her opinion on was the fact that Magana came in with someone else's passport. But in matter of Pula, it has been held that the judge must consider all the circumstances in an asylum case and can't simply hold that kind of entry against the credibility of the respondent. But, in fact, this judge did. In another instance, the judge made quite a long discussion about the name of the assailant. Apobo is a name, a Spanish word for nickname, and yet the person's nickname was Chacal. And there was a lot of pages devoted to the discrepancy between that name, which really was irrelevant. It was a typographical error on the part of the attorney's office mixing up the name of Apobo and Chacal. Rather than asking, when the respondent testified, look, this happened to me and I was intimidated, rather than asking, well, how were you intimidated, there was this endless discussion about something completely and totally unimportant and irrelevant to this case. All right. Thank you, counsel. You're well over your time. Thank you very much. I thank you for listening to me. May it please the Court, Nicholas Harling for the Attorney General. Petitioner's asylum and withholding claims fail in part because she was the victim of crime and personal animus, and alternatively because she failed to demonstrate that her social group of women who were recruited for gang membership is cognizable. What about the argument that she was a member of a social group, which is to say her religious group, and that was part of the motivation for her persecution? Right. So she presented two particular social groups. The first one that I believe you're referring to is family members of clergy who speak out against gangs. Right. The immigration judge did a good job of explaining why that really wasn't tied into the religion, and I believe that's what you were getting at earlier, Judge Horwitz. So put aside for a second whether she showed that she was persecuted because of membership in that group. Is that a cognizable social group? For this case, it was assumed to be cognizable. So why doesn't the evidence support the conclusion that she was persecuted because of membership in that group? Right. The board found that there was a lack of nexus, and that's because there was no evidence to support Petitioner's belief that Chakal was motivated by her or her father's anti-gang activities. Well, but their anti-gang activities were part of their religious activities. In other words, she was speaking out as well as her father, but she in particular was speaking out against these groups. And so it essentially was intertwined with she was speaking out as a member of a religious group and as a minister of sorts in charge of a youth group. So her activities as well as her father's were as a result of their religious activities. So why can't it be inferred that the motivation was their anti-gang activities as part of their religious activity? It's important not to get bogged down into examining whether this is related to their religion because their father's a clergy or because it happens at a church on some occasions or that it's because of the anti-gang activities.  And there's no evidence, although she claimed that at church functions she essentially taught a Sunday school class in which she told children that gangs were bad. There's no evidence in the record that the gangs know anything about that, much less are motivated by that for targeting for harm. That's important. I'm not sure there's no evidence in the record. Isn't your better argument that the IJ had substantial evidence for concluding to the contrary? There is substantial evidence, but also if I could point, Your Honor, to the record of 237. She's describing how it happens. And what she says is her father would go into church. The gang members, she's explicit, would not be in church, but they would stand outside and they could hear her father preaching his anti-gang message. So there's no question in the record that the gang was aware of his anti-gang positions. There's nothing in the record to suggest that they know anything about what she did. She claims, and even if we assume that it's true that she was essentially teaching a Sunday school class, we don't know was this in the church, did the gang members hear it. And the further evidence supports that because every time in the record when you read it, it's clear what Chakal was motivated by because he doesn't mention, when he's talking to her directly, he doesn't talk anything about her religious activities or her father's religious activities to her. There are times when she's present. She talks about coming out of the church, and Chakal addresses her father. And he tells, he asks her, why are you, her father, preaching out or talking out against us? But it has nothing to do, there's nothing to suggest he's motivated by her. There's no direct evidence. A finder of fact might be able to infer on this record that it was because of that. But this finder of fact didn't. But if you read the record, it's clear that Chakal is, he is singularly motivated by his interest in making her his girlfriend. You know, then that's the part of the IJ's decision that gives me some difficulty. His girlfriend sounds antiseptic here. To say the least. It's a gang that's looking to recruit a woman as one of their associates, if you will. And the record's pretty clear that when that happened, women face real persecution. So to call this a romantic girlfriend thing, I think is, I'm not sure you need to do it in order to win your case, but it strikes me as the part of the IJ's decision that I find difficult to sort of, on a realistic basis, find accurate. Your point is well taken. But I would just point out that girlfriend is, at least in the translation, the term that was used at the hearing. So to the extent that she herself was saying Chakal wants, you know, is telling me I have to be his girlfriend, I'm not sure that we can. Well, there was plenty of evidence, plenty of evidence put in the record in this hearing about what gangs do. Of course. With respect to their quote unquote girlfriends. Of course. And I don't believe there's any suggestion that the immigration judge who sees, I'm sure sees these types of cases all the time and is very familiar with the country conditions in Central America and El Salvador in particular, I'm sure that she was very aware of the context in which these claims were being made. But they were being made in the context of the particular social group that she chose to present as her case. I've got a procedural question for you, the same one I asked your friend. What do we do with the lack of credibility finding? Is it not before us because the BIA assumed credibility? Correct. It's not before you, but if you find that the reasons for the board's decision were not adequate, then it needs to be remanded by the board and the board can then make a decision. Can that address the credibility issue? Sure. Yes, Your Honor. Okay. If I could just move on and address the second social group that was presented, women who are recruited for gang membership. The board found that that was not cognizable for two reasons. The first was because the petitioner herself did not present evidence to demonstrate that that group is distinct within the Salvadoran society. The board didn't say that it's not distinct. The board just said she didn't present evidence of that. And if you look at the opening brief, she doesn't meaningfully engage with that determination. She doesn't cite, you know, the board ignored this piece of evidence that I presented, which demonstrates that it's distinct. Alternatively, the board also found that that social group was impermissibly defined by the harm and has argued in the opening brief by the government that issue was waived. I'm sorry, in the answering brief by the government, because that issue was waived in the opening brief. And if it wasn't waived? Well, if it wasn't waived, as the board talks about in WGR, that there's a lot of case law out there that talks about the recognition that a social group can't simply be defined by the harm. In fact, we've said that. Yes, it has to stand independently of the harm feared. And additionally, for many of the same reasons, her CAT claim also fails. The lack of past persecution, which the government argues in the opening brief, not only was it not established, but she doesn't challenge it, so it's waived. And the fact that there's not even a well-founded fear of persecution because petitioner's father and family members have been able to continue living in El Salvador without harm. For those reasons, if there are no further questions, the government would request that the petition for review be denied. Thank you, counsel. I'll give you one minute, because you were over already. Your Honor, as I turn your attention to CAR pages 237 to 239, where she describes in her testimony that the gang members would actually listen outside of the church, and they would stay listening, and then they would be at the door when her and her father came out. And then they heard the father's message, and they would ask the father why he was preaching. And she definitely said, on cross, that the gangs target her father and her because of the anti-gang messages. And that's in the record. Thank you. All right. Thank you very much, counsel. Lemus Magana v. Barr is submitted.
judges: Wardlaw, Hurwitz, Korman